# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SOO LINE RAILROAD COMPANY,**
    **d/b/a CPKC,**

               **Plaintiff,**

      **v.**                          **Case No. 25-CV-1250**

**VILLAGE OF ELM GROVE,**

               **Defendant.**

---

# DECISION AND ORDER

---

## 1. Facts and Procedural Background

The Village of Elm Grove is a Wisconsin municipal corporation. (ECF No. 24, ¶ 5.) This lawsuit concerns an effort by the Village to bring an enclosed creek to the surface for stormwater management purposes—known as the Underwood Creek Daylighting Project. (ECF No. 1, ¶ 13; ECF No. 24, ¶ 13.)

In connection with its creek project, in 2023 the Village re-opened discussions about purchasing a 5.94-acre parcel of land from plaintiff Soo Line Railroad Company. (ECF No. 1, ¶ 13; ECF No. 24, ¶ 13.) Soo Line had previously offered to sell some or all of

this parcel to the Village in 2011 and 2012. (ECF No. 22 at 6 (citing ECF Nos. 23-1–23-5).) Sale negotiations were unsuccessful. (ECF No. 1, ¶ 18; ECF No. 24, ¶ 18; ECF No. 22 at 7.)

On August 5, 2025, the Village indicated it was going to condemn what the parties refer to as the Railroad Parcel (2.29 acres of the complete 5.94-acre parcel) pursuant to Wisconsin Statute § 32.05, leaving Soo Line with continued ownership of another 3.65 acres, known as the Remnant Parcel, and sent Soo Line a check for $501,000 as compensation. (ECF No. 1, ¶¶ 15, 18; ECF No. 24, ¶¶ 15, 18.)

On August 20, 2025, Soo Line filed this lawsuit challenging the Village's right to condemn the Railroad Parcel and the fairness of its compensation. (*See generally* ECF No. 1.) Soo Line pled five claims for relief: (1) federal preemption of the condemnation by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101, *et seq.*; (2) declaratory relief under 28 U.S.C. § 2201 that Soo Line is the fee owner of the Railroad Parcel; (3) just compensation for the Remnant Parcel under Wisconsin Statute § 32.05(3m), if the condemnation is not preempted; (4) just compensation for an unconstitutional taking under the Fifth Amendment to the U.S. Constitution; and (5) injunctive relief under 42 U.S.C. § 1983. (ECF No. 1, ¶¶ 22–43.)

On August 29, 2025, Soo Line filed a motion for a temporary restraining order and preliminary injunction. (ECF No. 4.) The request for a temporary restraining order was denied when the Village agreed to maintain the status quo pending resolution of the motion for a preliminary injunction. (ECF No. 17.)

In combination with its response to Soo Line's motion for a preliminary injunction, the Village filed a motion to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (ECF No. 21.)

Both Soo Line's motion for a preliminary injunction and the Village's motion to dismiss are fully briefed and ready for resolution. All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 18, 19.)

## 2. Motion to Dismiss

### 2.1. Applicable Law

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction. The court is required to consider subject matter jurisdiction as the first question in every case, and a suit must be dismissed if such jurisdiction is lacking. *Jakupovic v. Curran*, 850 F.3d 898, 902, (7th Cir. 2017). The district court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Bultasa Buddhist Temple v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). However, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (citation omitted).

The defendant also moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (1955)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the court accepts the plaintiff's well-pled factual allegations as true and draws all reasonable inferences in the plaintiff's favor, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption. *Id.* at 678–79.

### 2.2. Analysis

#### 2.2.1.  Subject Matter Jurisdiction

The Village appears to concede in its reply brief in support of its motion to dismiss that the court has diversity jurisdiction, and therefore subject matter jurisdiction, to hear this case. (ECF No. 29 at 1.) However, the Village's concession is framed in "even if" language and suggests its concession is limited to the federal preemption claim. (*See id.* at 1, 3 (acknowledging that the Village has no objection to this court resolving the preemption question).) Therefore, the court will briefly address this challenge and quell any doubt.

The Village originally alleged that the court lacked subject matter jurisdiction because Soo Line failed to timely initiate this action under Federal Rule of Civil Procedure 71.1. (ECF No. 22 at 12.) Rule 71.1 governs proceedings to condemn real property by eminent domain and requires defendants to serve an answer within twenty-one days after being served with notice of the condemnation if they object to the taking of their property. Fed. R. Civ. P. 71.1(a), (e)(2). But the Village did not initiate its condemnation proceeding under Rule 71.1. *See* Fed. R. Civ. P. 71.1(d) (describing the process by which a plaintiff should file a complaint and deliver notice of the property to be taken to the clerk and named defendants). Therefore, Rule 71.1 does not apply to this action.

Soo Line contends that the appropriate timeline for challenging the condemnation is found in Wisconsin Statute § 32.05(5). (ECF No. 26 at 9.)[1] Under this state statute, Soo Line timely filed suit within forty days from service of the Village's jurisdictional offer.[2] (*See* ECF No. 22 at 13 (wherein the Village acknowledges that it sent the jurisdictional offer on July 11, 2025).)

The Village responded that subject matter jurisdiction is still lacking because Wisconsin Statute § 32.05(5) requires right-to-take actions be filed in the county circuit court where the challenged property is located. (ECF No. 22 at 12–13.) However, state

---

[1] Citations in this decision are to the page numbers provided by ECF, not the page numbers listed at the bottom of the parties' filings.

[2] To be clear, "expiration of the statute of limitations is an affirmative defense that does not affect [a court's] subject matter jurisdiction." *Breneisen v. Countryside Chevrolet/Buick/GMC, Inc.*, 573 F. Supp. 3d 1328, 1330–31 (E.D. Wis. 2021) (quoting *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1001 (7th Cir. 2008)).

statutes cannot assign a state forum that limits federal courts' exercise of diversity and supplemental jurisdiction. *See Albert Trostel & Sons Co. v. Notz*, 536 F. Supp. 2d 969, 976–77 (E.D. Wis. 2008), *aff'd*, 679 F.3d 627 (7th Cir. 2012).

The Village agrees that the parties hereto are citizens of different states and that the property being condemned is worth more than $75,000. (ECF No. 24, ¶ 7.) Therefore, the court has subject matter jurisdiction over all claims in this case based on diversity of citizenship. The court will deny the Village's motion to dismiss for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1332.

### 2.2.2. Pleading Sufficiency under Rule 12(b)(6)

The Village alleges that each of Soo Line's four federal claims fails to state a claim under Rule 12(b)(6). (ECF No. 22 at 15–17 (not challenging claim three under Wisconsin law).) The court will address each claim in turn.

### (A) Federal Preemption

With respect to claims one and two, the Village argues that its condemnation is not preempted by the Interstate Commerce Commission Termination Act (the ICCTA) and, therefore, the ICCTA cannot support a federal preemption claim. (ECF No. 22 at 15.)

As implied by its name, the ICCTA abolished the Interstate Commerce Commission and conferred "exclusive" jurisdiction over the regulation of railroad transportation on a new entity named the Surface Transportation Board (the Board). *Wedemeyer v. CSX Transportation, Inc.*, 850 F.3d 889, 894 (7th Cir. 2017) (citing 49 U.S.C.

§ 10501(b)). Through the ICCTA, "Congress defined 'transportation' broadly to include railroad property, facilities, and equipment 'related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use.'" *Id.* (citing 49 U.S.C. § 10102(9)).

"The [Board] has explained that there are two manners in which state or local actions could be preempted: (1) categorical, or per se, preemption, and (2) as-applied preemption." *Wedemeyer*, 850 F.3d at 894 (citing *CSX Transp., Inc.—Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *2–3 (S.T.B. May 3, 2005)). "Categorical preemption occurs when a state or local action is preempted on its face despite its context or rationale." *Union Pac. R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 679 (7th Cir. 2011) (citation omitted). An action "may be preempted 'as applied' based on the degree of interference that the particular action has on railroad transportation—this occurs when the facts show that the action 'would have the effect of preventing or unreasonably interfering with railroad transportation.'" *Id.* (citation omitted).

Soo Line argues that preemption exists regardless of whether the court employs the categorical or as-applied framework because the Railroad Parcel is railroad property and condemnation would interfere with rail transportation. (ECF No. 26 at 9–10.) In its complaint Soo Line asserts that it uses the Railroad Parcel for "emergency and non-emergency access to its active track and ballast, and for staging of equipment and materials essential to the safety and efficiency of the railway." (ECF No. 1, ¶ 27.)

These operational activities suggest that Soo Line uses the property in question in a manner related to the movement of passengers or property by rail. *See* 49 U.S.C. § 10102(9). The Village contends that the activities could occur elsewhere along the rail line but do not dispute the activities' relationship to rail operations. (*See generally* ECF Nos. 21, 29.) Therefore, the activities could plausibly fall within the ICCTA's "broad and sweeping" preemption of state and local regulation of railroad transportation. *See Union Pac. R. Co.*, 647 F.3d at 678 & 679 n.2 (observing that condemnation is a form of regulation under the ICCTA because the condemning authority would control the piece of land in question).

Even if categorical preemption is inapplicable, as-applied preemption would prevent the Village's condemnation if it would unreasonably interfere with rail operations. *See Union Pac. R. Co.*, 647 F.3d at 679. Whether the interference is unreasonable is a "fact-intensive inquiry" inappropriate for resolution on a motion to dismiss. *See BNSF Ry. Co. v. Town of Cicero, Illinois*, 592 F. Supp. 3d 716, 729 (N.D. Ill. 2022) (denying motion to dismiss a claim for federal preemption because the plaintiff sufficiently alleged the ordinance in question was a regulation of railroad transportation).

Soo Line has pled sufficient facts to state a claim for preemption based on interference with its rail operations. The court will therefore deny the Village's motion to dismiss claims one and two.

8

**(B) Fifth Amendment Taking**

With regard to claim four, the Village contends that the Takings Clause of the Fifth Amendment cannot support a claim because Soo Line does not allege that the condemnation lacks a public purpose or that the Village failed to offer Soo Line compensation. (ECF No. 22 at 15–17.) Soo Line responds that it has stated a claim because it challenges the adequacy of the compensation. (ECF No. 26 at 12.)

"The Fifth Amendment does not proscribe takings, but rather takings without just compensation." *Kolton v. Frerichs*, 869 F.3d 532, 535 (7th Cir. 2017). "Neither [the Seventh Circuit] nor the Supreme Court have ever recognized a direct cause of action for compensation under the Takings Clause." *Gerlach v. Rokita*, 95 F.4th 493, 498 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1044 (2025). The Supreme Court confirmed just last year "that constitutional concerns do not arise when property owners have other ways to seek just compensation." *DeVillier v. Texas*, 601 U.S. 285, 292 (2024).

Under Wisconsin law, any party having an interest in condemned property may appeal the adequacy of compensation to a commission of county condemnation commissioners and to the circuit court of the county wherein the property is located. *See* Wis. Stat. § 32.05(9)–(10). Therefore, an adequate process exists for Soo Line obtaining just compensation for the Railroad Parcel. *See Preseault v. I.C.C.*, 494 U.S. 1, 11 (1990) ("All that is required is the existence of a reasonable, certain and adequate provision for obtaining

compensation at the time of the taking.") (internal quotations omitted) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124–125 (1974)).

In short, the Fifth Amendment does not provide a cause of action when other remedies exist to ensure that just compensation is paid for condemned property. Such remedies exist under Wisconsin law. Accordingly, Soo Line has failed to state a claim under the Takings Clause. The court will grant the Village's motion to dismiss the fourth claim from Soo Line's complaint.

**(C) Section 1983 Claim**

With respect to claim five, the Village asserts that Soo Line cannot bring a Section 1983 claim related to the ICCTA because its condemnation is not preempted by the ICCTA. (ECF No. 22 at 15, 18–29.) As explained above, Soo Line has stated a claim for federal preemption under the ICCTA. (*See supra* at 6–8.)

Federal preemption is secured by the Supremacy Clause, which affords priority to federal rights whenever they come in conflict with state law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107–08 (1989). The Supremacy Clause, however, "is not a source of any federal rights." *Id.* A violation of federal rights is a necessary element to a Section 1983 claim. *BNSF Ry. Co.*, 592 F. Supp. 3d at 733 ("Section 1983 authorizes a civil action for a 'deprivation of any rights, privileges, or immunities' secured by the Constitution or federal law against a person who acts under color of state law.") (citing 42 U.S.C. § 1983; *Wilson v. Warren County*, 830 F.3d 464, 468 (7th Cir. 2016)).

Federal rights are not necessarily conferred by every preempting statute:

> Given the variety of situations in which preemption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority. Conversely, the fact that a federal statute has preempted certain state action does not preclude the possibility that the same federal statute may create a federal right for which § 1983 provides a remedy.

*Golden State Transit Corp.*, 493 U.S. at 107–08.

Soo Line summarily claims that its Section 1983 claim hinges on preemption under the ICCTA. (*See* ECF No. 26 at 6.) The ICCTA does not expressly forbid Section 1983's application. *See* 49 U.S.C. § 10101 *et seq.* The Village therefore has the burden of establishing that the federal right to Board jurisdiction secured by the ICCTA is not enforceable under Section 1983. *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 186 (2023) ("A statute could, of course, expressly forbid § 1983's use. Absent such a sign, a defendant must show that Congress issued the same command implicitly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.") (internal citation and quotations omitted).

The Village does not argue that the ICCTA precludes enforcement under Section 1983. (*See* ECF No. 22 at 15, 18–29; ECF No. 29 (declining to address the Section 1983 claim in its reply brief).) Therefore, the Village has not established any failure to state a Section 1983 claim on Soo Line's part.

The court will deny the Village's motion to dismiss Soo Line's fifth claim for injunctive relief under Section 1983.

### 3. Motion for Preliminary Injunction

"A preliminary injunction is 'an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion") (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)).

#### 3.1. Applicable Law

The court's assessment of whether to grant a preliminary injunction proceeds in two phases. A party seeking to obtain a preliminary injunction must first demonstrate "that it is likely to succeed on the merits of its claims and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without injunctive relief." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023). "If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction." *Girl Scouts of Manitou Council, Inc.*

*v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009).

If the court concludes that the moving party has satisfied the three threshold requirements, it moves on to the second phase, which is the balancing phase. *Cassell*, 990 F.3d at 545 (quoting *Girl Scouts*, 549 F.3d at 1086). "[T]he court, in an attempt to minimize the cost of potential error, 'must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the public interest.'" *Girl Scouts*, 549 F.3d at 1086 (internal citation and quotation marks omitted) (quoting *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986)).

### 3.2. Analysis

The standard of proof necessary to obtain a preliminary injunction is greater than that necessary to survive a motion to dismiss under Rule 12(b)(6). *See Alarm Detection Systems, Inc. v. Village of Schaumburg*, 930 F.3d 812, 823 (7th Cir. 2019) (finding that the plaintiffs "*pleaded*" a plausible claim because of the favorable inferences afforded under a Rule 12(b)(6) analysis but had not "*demonstrated* a likelihood of success on the merits") (emphasis in original). On a motion for a preliminary injunction, the court does not accept the plaintiff's allegations as true or give it the benefit of all reasonable inferences in its favor. *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). A moving party "need not show that it definitely will win the case" or even establish "proof by a

preponderance" of the evidence but normally must demonstrate "how the applicant proposes to prove the key elements of its case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

Soo Line asserts that the ICCTA expressly preempts the Village's state law condemnation of the Railroad Parcel. (ECF No. 5 at 8.) The Village responds that condemnation cannot be "expressly," also known as "categorically," preempted because the ICCTA does not directly address condemnation or fall within the types of categorical preemption identified by the Board. (*See* ECF No. 22 at 20–22.)

The Board has identified "two broad categories of state and local actions [that are categorically] preempted regardless of the context or rationale for the action":

> The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board—such as the construction, operation, and abandonment of rail lines (see 49 U.S.C. [§§] 10901–10907); railroad mergers, line acquisitions, and other forms of consolidation (see 49 U.S.C. [§§] 11321–11328); and railroad rates and service (see 49 U.S.C. [§§] 10501(b), 10701–10747, 1101–11124).

*CSX Transp., Inc.—Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *2–3 (S.T.B. May 3, 2005) (citations to supporting cases omitted).

The Board has since addressed the question of state condemnation of railroad property through the as-applied lens without reference to the possibility of categorical preemption. *See Norfolk S. Ry. Co.—Petition for Declaratory Order*, STB Finance Docket

No. 35196, 2010 WL 691256, 2010 STB LEXIS 635 (S.T.B. Feb. 26, 2010). *Norfolk* involved facts similar to the present circumstances: a city proposed to condemn property adjacent to active rail lines for construction of a public park, but the railroad used that property for track maintenance and derailment access. *See id.* The Seventh Circuit found the Board decision that the planned condemnation was preempted by the ICCTA instructive when it observed and followed a trend in favor of as-applied analysis in the condemnation context. *See Union Pac. R. Co.*, 647 F.3d at 679–80 (further observing that "condemnation is not a rule of general applicability because each instance necessarily varies with the facts of the case and the specific property subject to the condemnation"). Although the Seventh Circuit remarked that a categorical analysis may be applicable in some condemnation actions (*see id.* at 680 n.6), this context, provided by the comparable Board decision and the Seventh Circuit's interpretation thereof, demonstrates that the present matter is not such an action. Thus, the court will turn to the as-applied framework.

Under the as-applied framework, preemption hinges on whether the condemnation prevents or unreasonably interferes with railroad transportation. *See Union Pac. R. Co.*, 647 F.3d at 680. As previously mentioned, the ICCTA broadly defines "transportation" to include railroad property related to the movement of passengers or property. (*See supra* at 6 (citing *Wedemeyer*, 850 F.3d at 894; 49 U.S.C. § 10102(9)).)

As evidence of how condemnation by the Village would unreasonably interfere with its railroad transportation, Soo Line relies on a declaration from its Director of Track

and Structures, Corey Rohrbeck, who states he is "responsible for maintenance of Soo Line's track and structures between La Crosse, WI and Chicago, IL." (ECF No. 6, ¶ 2.) His responsibilities include "the property ('Railroad Parcel') at issue in this suit and the active rail line adjacent to the Railroad Parcel." (ECF No. 6, ¶ 4.) Rohrbeck explains that "[t]he Railroad Parcel is the only location on Soo Line's active rail line in Waukesha County, Wisconsin, where Soo Line owns or possesses property that is (i) directly accessible from a public road and (ii) also adjacent to the active rail line." (ECF No. 6, ¶¶ 2, 6.)

Rohrbeck further states that Soo Line uses the Railroad Parcel for emergency and routine maintenance access, staging of equipment and materials to service the tracks, flag installation access, and fueling rail equipment and vehicles. (ECF No. 6, ¶¶ 7–14.) Rohrbeck explains that condemnation would require Soo Line workers to search for public parking and park maintenance vehicles on city streets, potentially blocking traffic and delaying response times. (ECF No. 6, ¶ 12.) He also states that "Soo Line is currently storing replacement rail on the Railroad Parcel for use when rail, for several miles in either direction, needs replacement." (ECF No. 6, ¶ 13.) Soo Line contends that condemnation would make these necessary operations "less safe and efficient" and would exert effects on the town, the rail system, and Soo Line. (ECF No. 5 at 13.)

Rohbeck's declaration lacks important details. For example, he does not specify how often track maintenance occurs, what it consists of, or how it will be negatively impacted or made more difficult or time consuming should the Village be allowed to

condemn the Railroad Parcel. (ECF No. 6, ¶¶ 7–14.) Nor does he explain how much of the Railroad Parcel is used for any of the activities he describes. Rohrbeck says that the Railroad Parcel allows Soo Line to "efficiently access the active track without the risk of interference" but does not explain what interference might occur. (ECF No. 6, ¶ 7.) He states that train traffic "might be slowed or stopped at Milepost 95," and the Railroad Parcel is valuable for placing maintenance flags because it is adjacent to Milepost 95. (ECF No. 6, ¶ 10.) But he does not clarify where the "adjacent" Milepost 95 is located or why or how often a traffic slowdown may occur. (ECF No. 6, ¶ 10.) Rohrbeck says that Soo Line needs to maintain "several culverts in close proximity to the Railroad Parcel" without identifying how many culverts there are, where they are located, what "close proximity" means, or how condemnation of the Railroad Parcel will impact Soo Line's ability to maintain the culverts. (ECF No. 6, ¶ 11.)

Rohrbeck also states there is no guarantee that Soo Line workers will be able to find public parking if the Railroad Parcel is condemned, while simultaneously suggesting that Soo Line workers would simply block traffic if needed. (ECF No. 6, ¶ 12). The preemption inquiry only concerns the interference with rail operations, not whether vehicle traffic would be impacted. *See Union Pac. R. Co.*, 647 F.3d at 680 (observing that preemption hinges on whether the condemnation prevents or unreasonably interferes with railroad transportation). Rohrbeck claims that Soo Line needs to move equipment "fast" in emergencies without any context about the meaning of "fast," what might

constitute an emergency, how often they occur, or whether Soo Line relies on this access point for all emergencies within a certain proximity. (ECF No. 6, ¶ 14.) In fact, Rohrbeck variously suggests that this particular access point either serves the entire county or only a few miles in each direction. (ECF No. 6, ¶¶ 6, 13.)

Rohrbeck does not even offer a ballpark estimate of how much more time or expense Soo Line would incur by conducting its maintenance and emergency response activities if the Railroad Parcel is condemned by the Village. Without such evidence, the court cannot determine the extent to which condemnation would prevent or unduly interfere with railroad transportation. *See, e.g.*, *Reading Blue Mountain & N. R. Co. v. UGI Utilities, Inc.*, No. 3:11-CV-2182, 2012 WL 251960, at *4 (M.D. Pa. Jan. 25, 2012) (denying preliminary injunction under the ICCTA because a sufficient likelihood of success could not be established by the conclusory and unsubstantiated arguments presented by the movant).

The Board has found similar condemnation actions of track-adjacent property preempted by the ICCTA due to safety concerns and operational interruptions. *See, e.g.*, *Norfolk S. Ry. Co.—Petition for Declaratory Order*, STB Finance Docket No. 35196, 2010 WL 691256, at *5, 2010 STB LEXIS 635, at *13 (S.T.B. Feb. 26, 2010) (concluding that a proposed city park adjacent to an active rail line would "prevent the railroad from properly conducting railroad maintenance activities and clearing derailments"); *City of Lincoln-Petition for Declaratory Ord.*, Fed. Carr. Cas. ¶ 37154, 2004 WL 1802302 (S.T.B. Aug. 11,

2004) (finding condemnation for a trail was preempted because it would unduly interfere with railroad operations and present safety hazards).

But unlike those cases, the Village does not propose to invite the public into the space for recreation. Soo Line also does not argue that the creek might cause safety issues from a water management perspective. The Village proposes three alternative access points (all road crossings) from which Soo Line could conduct its maintenance and emergency response activities. (ECF No. 22 at 8.) Soo Line responds that "working at road crossings is dangerous, blocks traffic, and slows responses." (ECF No. 26 at 16 (citing Rohrbeck's declaration).) As previously explained, Soo Line fails to contextualize these conclusions. *Cf. District of Columbia v. 109, 205.5 Square Feet of Land*, No. Civ.A. 05-202, 2005 WL 975745, at *3 (D.D.C. April 21, 2005) (holding that the ICCTA did not preempt the city's condemnation where defendant could access its rail signal equipment from another location and perform track maintenance from public intersections).

Neither party specifies precisely where the creek is relative to the Railroad Parcel or where the Underwood Creek Daylighting Project will be. The Village mentions that the creek was enclosed beneath a parking lot but does not explain where the parking lot is relative to the Railroad Parcel. (ECF No. 22 at 2.) The parties also did not provide any details about the spatial relationship of the tracks, the Railroad Parcel, and Soo Line's operations. Pictures provided by the parties depict that a small portion of the Railroad Parcel is immediately adjacent to the tracks with a longer section of the Railroad Parcel

running diagonally away from the tracks. (*See* ECF No. 5 at 3; ECF No. 22 at 8.) Without these details, the court cannot determine whether the condemned property is "sufficiently distant from railroad operations to present no unreasonable interference." *Union Pac. R. Co.*, 647 F.3d at 682 n.9.

The Village also contends that back in 2011–2012 Soo Line was willing to sell the entire 5.97 acres, including the Railroad Parcel, without seeking any right to continue to access its active rail line from across the property it would be selling. That fact, it contends, undercuts Soo Line's present contention that access to the Railroad Parcel is critical to its maintenance of the adjacent active rail line. While not disputing anything about the 2011–2012 negotiations, Soo Line points out that, when negotiations began again in 2023 and into 2024, it consistently told the Village that in the event of a sale it would need continued access to its active rail line. (ECF No. 28, ¶¶ 9–16.) Although it is by no means dispositive, this history raises some doubt about whether the condemnation truly would unreasonably interfere with Soo Line's operations.

Although Soo Line raises important questions about the condemnation's impact on the safety and efficiency of its rail operations, it has not established that condemnation of the Railroad Parcel would unreasonably interfere with railroad transportation. Absent that evidence or information, it has not established a strong likelihood of success on this claim. *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023) (observing that the Supreme Court abrogated the "better than negligible" standard and

the Seventh Circuit has interpreted that precedent to require a "strong likelihood of success").

Without a strong likelihood of success on the merits, the court must deny Soo Line's motion for a preliminary injunction.

## 4. Conclusion

The Village moved to dismiss Soo Line's complaint but has failed to establish appropriate grounds for doing so, with the exception of Soo Line's fourth claim for a taking under the Fifth Amendment.

Soo Line moved for a preliminary injunction to enjoin the Village from taking possession of the Railroad Parcel. But Soo Line has not demonstrated a sufficient likelihood of success on the merits of its preemption claim. Therefore, the court will not issue a preliminary injunction.

**IT IS THEREFORE ORDERED** that the Village of Elm Grove's motion to dismiss (ECF No. 21) is **granted in part and denied in part** as set forth in this order.

**IT IS FURTHER ORDERED** that Soo Line Railroad's motion for a preliminary injunction (ECF No. 4) is **denied**.

Dated at Milwaukee, Wisconsin this 7th day of November, 2025.

WILLIAM E. DUFFIN
U.S. Magistrate Judge