# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SOO LINE RAILROAD COMPANY,**
**d/b/a CPKC,**

        **Plaintiff,**

        **v.**                   **Case No. 25-CV-1250**

**VILLAGE OF ELM GROVE,**

        **Defendant.**

---

## DECISION AND ORDER

---

### 1. Procedural History

Plaintiff Soo Line Railroad Company brought this action challenging the Village of Elm Grove's authority to condemn a certain parcel of land and the fairness of its compensation if condemnation is allowed. (*See* ECF No. 1.)

The court granted the Village's motion to dismiss Soo Line's claim for a taking under the Fifth Amendment. (ECF No. 31 at 21.) Now the Village has filed a motion for summary judgment with respect to three of Soo Line's remaining claims, i.e., those claims relating to the Village's ability to condemn the land but not as to the fairness of the compensation. (ECF No. 39.) During the course of briefing Soo Line filed a motion to

amend the court's scheduling order and permit supplemental expert disclosures. (ECF No. 50.)

Both motions are now fully briefed and both parties have consented to the full jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 18, 19.)

**2. Facts**

The condemnation at the heart of this lawsuit is part of the Village's effort to bring an enclosed creek to the surface for stormwater management purposes—known as the Underwood Creek Daylighting Project. (ECF No. 57, ¶¶ 14–15.) The condemned property, which the parties refer to as the "Railroad Parcel," is 2.29 acres of a 5.94-acre parcel owned by Soo Line in Elm Grove, Wisconsin. (*Id.*, ¶ 11.)

In 2009 the Surface Transportation Board approved Soo Line's request to formally abandon an inactive railroad track and its adjacent right-of-way, which ran through the Railroad Parcel. (ECF No. 57, ¶¶ 1–4.) However, the Railroad Parcel is located thirty-three feet away from the centerline of another one of Soo Line's rail lines that remains active today. (*Id.*, ¶ 26.) Part of the Railroad Parcel abuts approximately 345 feet of Soo Line's right-of-way for the adjacent rail line. (*Id.*, ¶ 27.)

Additional relevant facts will be discussed herein as appropriate.

### 3. Motion to Amend Scheduling Order & Permit Supplemental Expert Disclosure

#### 3.1. Legal Standard

Federal Rule of Civil Procedure 6(b) is "[t]he default rule governing extensions of time." *Wyngaard v. Woodman's Food Mkt., Inc.*, No. 19-CV-493-PP, 2024 WL 4103764, at *6 (E.D. Wis. Sept. 6, 2024) (analyzing which rule applies to litigant's motion to extend deadline to name expert witnesses and observing that non-movant forfeited any argument that movant failed to satisfy Rule 6(b)). Under Rule 6(b)(1)(B), the court may extend a deadline to act that has already expired if the moving party demonstrates both good cause and excusable neglect.

Federal Rule of Civil Procedure 16(b) governs scheduling. Rule 16(b)(4) permits modification of a court's scheduling order "only for good cause and with the judge's consent." "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

Federal Rule of Civil Procedure 26(a)(2)(D) governs the time for making expert witness disclosures. "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "The enforcement mechanism for a violation of Rule 26(a) is Rule 37(c)(1)." *Wyngaard*, No. 19-CV-493-PP, 2024 WL 4103764, at *7. Rule 37(c)(1) states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information

or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Federal Rule of Civil Procedure 26(a)(2)(E) directs parties to supplement their expert disclosures when required under Rule 26(e), which instructs litigants to "supplement or correct" their initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

### 3.2. Analysis

The court's scheduling order instructed Soo Line to "disclose expert witnesses in accordance with Civil L.R. 26(b) no later than March 2, 2026." (ECF No. 35, ¶ 3.) The Village was ordered to disclose its expert witnesses by May 2, 2026, and the parties were required to disclose rebuttal experts no later than June 4, 2026. (ECF No. 35, ¶¶ 4–5.) The scheduling order set the discovery deadline at June 22, 2026, and the deadline for filing dispositive motions at July 2, 2026. (ECF No. 35, ¶¶ 6–7.)

The parties subsequently agreed to extend the deadlines for expert witness disclosures to March 20, 2026, for Soo Line and May 20, 2026, for the Village. (ECF No. 50 at 2.) There is no indication that the deadline for rebuttal expert witnesses was extended.

On March 20, 2026, Soo Line disclosed one expert witness regarding the value of the real estate in dispute. (ECF No. 50 at 2; ECF No. 62 at 1.) That same day the Village

4

filed a motion for partial summary judgment—three months before the deadline for doing so. (ECF No. 39.) Of course, nothing required the Village to wait until the deadline for filing dispositive motions to do so; it was free to file the motion any time before June 22, 2026. In its motion the Village argues that the Underwood Creek Daylighting Project "is well designed and thought out [and that] there is no detriment to this parcel." (ECF No. 40 at 6.) The Village also provided affidavits and related documentation, including a floodplain study report, maps, and communications, from two professional engineers, Rich Klein and Aaron Volkening, who work at Stantec Consulting Services, Inc. (*See* ECF Nos. 42, 43.)

Two weeks later, Soo Line served "supplemental expert disclosures," naming three fact witnesses who will also testify as non-retained experts (Karl Rittmeyer, Scott Paradise and Mehwish Rahman) as to reasons why the Underwood Creek Daylighting Project "is not well designed, including issues related to water surface elevation in the proposed channel, hydraulics, and the flooding's effect on the rail line."(ECF No. 50 at 3–4 (citing ECF Nos. 51, 51-2) (internal quotations omitted).)

Soo Line asked the Village to extend Soo Line's expert witness disclosure deadline to render these "supplemental" disclosures timely, but the Village rejected the request. (*See* ECF No. 51-1.) As a result, Soo Line moves this court to extend its expert witness disclosure deadline by fourteen days because Soo Line made "supplemental disclosures" in response to the Village's motion for partial summary judgment. (ECF No. 50 at 1.)

The Village opposes Soo Line's motion on the ground that the disclosures are not truly supplemental. (ECF No. 62 at 5–7.) It also argues that Soo Line has failed to meet its burden of showing good cause under Rule 16(b)(4) and substantial justification or harmlessness under Rule 37(c)(1). (*Id.* at 7–13.)

The court agrees that the disclosures are not supplemental. Soo Line does not contend that the experts will correct or complete the scope of any subject matter to be addressed by its one timely disclosed expert. Nor does Soo Line provide any basis for the court to find good cause or excusable neglect for Soo Line's failure to include these experts in its initial disclosure.

Soo Line states in its brief in support of this motion that it made the additional disclosures to "rebut" the Village's summary judgment evidence. (ECF No. 50 at 5.) The Village acknowledges that Soo Line disclosed these new experts to "rebut" the Village's evidence but argues it is too late. (*See* ECF No. 62 at 5.)

Although the Village had every right to file its summary judgment motion when it did, filing it the same day Soo Line's expert witness disclosures were due and before the deadline for the Village's expert disclosures or rebuttal expert disclosures were due has created the odd paradox in which Soo Line's additional expert witnesses, who have since been timely disclosed as rebuttal experts, could testify at trial (the Village does not contend otherwise) but cannot testify in response to the Village's motion for summary judgment.

The standards for extending a deadline, modifying the court's scheduling order, and permitting reliance on belatedly disclosed experts are inapplicable. Because the disclosures in question are rebuttal evidence, Soo Line did not miss any deadline and can rely on these experts to oppose the Village's motion. The court will deny Soo Line's motion to amend the scheduling order and permit supplemental expert disclosures but will consider the rebuttal experts' opinions in deciding the Village's motion for summary judgment.

### 4. Motion for Summary Judgment

#### 4.1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)).

Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "The controlling question is whether a reasonable trier of fact could find in favor

of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

**4.2. Analysis**

The Village has moved for summary judgment on Soo Line's claims for (1) federal preemption of the Village's condemnation by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101, *et seq.*; (2) declaratory relief under 28 U.S.C. § 2201 that Soo Line is the fee owner of the Railroad Parcel; and (3) injunctive relief under 42 U.S.C. § 1983.

The Village argues that this condemnation is not preempted by the Interstate Commerce Commission Termination Act (the "ICCTA"). (ECF No. 40 at 8.) As implied by its name, the ICCTA abolished the Interstate Commerce Commission and conferred "exclusive" jurisdiction over the regulation of railroad transportation on a new entity named the Surface Transportation Board. *Wedemeyer v. CSX Transportation, Inc.*, 850 F.3d 889, 894 (7th Cir. 2017) (citing 49 U.S.C. § 10501(b)). Through the ICCTA, "Congress defined 'transportation' broadly to include railroad property, facilities, and equipment 'related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use.'" *Id.* (citing 49 U.S.C. § 10102(9)).

As the court stated in its ruling on Soo Line's motion for a preliminary injunction (ECF No. 31 at 14–15), the Seventh Circuit established the applicable standard for preemption under the ICCTA as follows: whether the action (the Village's condemnation

in this case) "would have the effect of preventing or unreasonably interfering with railroad transportation." *Union Pac. R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 679 (7th Cir. 2011) (citation omitted).

Soo Line argues, among other things, that the Village's condemnation would unreasonably interfere with its rail operations because the Underwood Creek Daylighting Project would endanger Soo Line's adjacent active rail line. (ECF No. 52 at 18–22.) Soo Line contends that the project design threatens the stability of the active rail line because the Village failed to consider the effect of increased water flow on the nearby culvert and how the new path of Underwood Creek will affect slope stability along the rail line. (*See id.*) Soo Line further contends that the Village will invite danger by inviting the public to utilize planned recreational trails near the active rail line. (*See id.*) Soo Line's safety arguments rely on proposed findings of fact supported by their rebuttal experts. (*See id.* (citing ECF No. 57, ¶¶ 48–67).)

The Village does not challenge the merits of these proposed findings of fact and instead argues they are immaterial and should be stricken. (*See* ECF No. 59, ¶¶ 48–67.) But, as stated above, Soo Line may rely on these experts as rebuttal witnesses. The Village argues that the issues are immaterial because Soo Line's criticisms "would sound in some future tort action, not preemption." (ECF No. 58 at 13.) But the Village has not explained why the court should not consider what the Village plans to do with the land if condemnation proceeds. In fact, the Village's opening brief in support of its motion for

summary judgment raised the issue of the project design's impact on the land, which prompted Soo Line's rebuttal on this subject. (*See* ECF No. 40 at 11.)

Moreover, the Surface Transportation Board considers the impact of the condemning entity's plans, not simply the condemnation itself, relevant to the preemption analysis. *See Norfolk S. Ry. Co.—Petition for Declaratory Order*, STB Finance Docket No. 35196, 2010 WL 691256, 2010 STB LEXIS 635 (S.T.B. Feb. 26, 2010) (considering safety hazard presented by proposed park); *City of Lincoln-Petition for Declaratory Ord.*, Fed. Carr. Cas. ¶ 37154, 2004 WL 1802302 (S.T.B. Aug. 11, 2004) (finding condemnation for a trail was preempted because it would unduly interfere with railroad operations and present safety hazards).

The parties have submitted conflicting evidence, based on expert opinions, about the impact of the Underwood Creek Daylighting Project on the stability of the active rail line. (*See* ECF Nos. 40 at 11; 52 at 18–22.) This creates a genuine dispute of material fact as to whether the Village's condemnation will prevent or unreasonably interfere with railroad transportation. And the resolution of that dispute will determine whether the condemnation action by the Village is preempted by the ICCTA.

Because factual disputes preclude summary judgment on the preemption claim, the court will not address the parties' remaining arguments regarding how Soo Line uses the Railroad Parcel. The court will also not reach the claims for declaratory and injunctive

10

relief. (ECF No. 40 at 7 (the Village acknowledges that the viability of these claims is contingent upon the question of federal preemption).)

**5. Conclusion**

**IT IS THEREFORE ORDERED** that Soo Line Railroad's motion to amend the court's scheduling order and permit supplemental expert disclosures (ECF No. 49) is **denied**.

**IT IS FURTHER ORDERED** that the Village of Elm Grove's motion for partial summary judgment (ECF No. 39) is **denied**.

The case shall proceed consistent with the court's scheduling order, as modified. (ECF Nos. 35, 68.)

Dated at Milwaukee, Wisconsin this 21st day of July, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge